OPINION
Defendant-appellant, Alan Paul Johnson, appeals his convictions in the Clermont County Court of Common Pleas for his second felony offense for operating a motor vehicle while under the influence ("OMVI") and for driving without a valid operator's license.
Just before 3:00 a.m. on January 8, 1999, Deputy William Welch of the Clermont County Sheriff's Office responded to a car fire near the intersection of State Route 32 and Dela Palma Road in Clermont County, Ohio. When Dep. Welch arrived, fire and emergency crews were attempting to extinguish the burning car, which was in the median strip of S.R. 32. S.R. 32 had been reduced to one lane of travel in each direction due to the fire and heavy overnight snows.
Dep. Welch noticed appellant standing beside a fire truck parked in the high speed lane of S.R. 32 which had been closed. Appellant was the only person at the scene not with the fire or emergency services. Dep. Welch approached, asking appellant for his name, who owned the car, and who had been driving the car. Appellant responded that his name was "Raoul."
Dep. Welch informed appellant that he knew appellant through previous contact at the county jail, where appellant had earlier been incarcerated. Appellant gave his proper name. Dep. Welch again asked who had been driving the car, and appellant responded that he did not know. Appellant stated that he happened by the burning car while walking along S.R. 32 towards Georgetown, Ohio. Dep. Welch thought this odd. Appellant was lightly dressed, but it was very cold. Dep. Welch noticed a strong odor of alcohol emanating from appellant's person and breath. Appellant had glassy, bloodshot eyes and was unsteady on his feet, leaning against the fire truck to maintain his balance.
At that time, Sergeant Tim Zurmehly of the Clermont County Sheriff's Office arrived and walked to the burning car to obtain the license plate number. Dep. Welch approached the car to join Sergeant Zurmehly, but he immediately noticed appellant walking into the open lane of traffic on S.R. 32. Concerned about appellant's safety, Dep. Welch interceded and placed appellant in the back seat of his patrol cruiser. Dep. Welch entered the front seat of the cruiser and again asked if appellant had been driving the burning car. Appellant again answered that he didn't know.
At that time, Trooper Aaron Gentry of the Ohio State Highway Patrol arrived. Fire personnel successfully extinguished the car fire. Upon Tpr. Gentry's arrival, Dep. Welch exited his cruiser and told Tpr. Gentry that the burning car had been verified as belonging to appellant and that appellant smelled of alcohol. Appellant was taken out of the cruiser, and Tpr. Gentry took control of him as a possible OMVI suspect. Dep. Welch left the scene.
Tpr. Gentry immediately noticed that appellant's eyes were glassy and bloodshot and that he had problems maintaining his balance. Tpr. Gentry directed appellant to his patrol cruiser, approximately one hundred fifty to two hundred feet away. Appellant stumbled on at least two occasions, and his speech was noticeably slurred. Tpr. Gentry asked what had happened, and appellant related the same story given to Dep. Welch. Tpr. Gentry informed appellant that it had been discovered that appellant owned the car, but appellant responded that it was not his car. Tpr. Gentry asked if appellant had been drinking, and appellant stated that he had been drinking all day.
Upon arriving at his cruiser, Tpr. Gentry concluded that appellant had committed an OMVI offense. He arrested and handcuffed appellant and placed him in the back of the cruiser. Tpr. Gentry conducted a horizontal gaze nystagmus test inside the cruiser, concluding that appellant displayed all six points indicating intoxication. Gentry again asked if appellant had been driving and what had happened. Appellant stated he had not been driving and that he didn't know what had happened.
Appellant was taken to Highway Patrol Post No. 13 in Batavia, Ohio, where he was shown the BMV 2255 implied consent form and asked if he would submit to a blood alcohol level concentration test. Appellant refused all tests, and asked for an attorney. Appellant was asked to name the driver of the burnt car, but he did not give any names.
On January 27, 1999, the Clermont County Grand Jury indicted appellant on one count of a second felony OMVI offense in violation of R.C. 4511.19(A)(1), a fourth degree felony, and one count of driving without a valid operator's license in violation of R.C. 4507.02(D)(2), a first degree misdemeanor. On February 23, 1999, appellant filed a motion to suppress all statements he made to Dep. Welch and Tpr. Gentry. Both officers testified at a suppression hearing that was held on March 5, 1999. On March 24, 1999, the trial court filed its entry and decision denying the motion to suppress as to statements made before appellant was arrested by Tpr. Gentry. All statements made to Tpr. Gentry after appellant's arrest were suppressed because appellant had not been advised of his Miranda rights upon his arrest.
On March 24 and 25, 1999, a jury trial was held, at which both officers and appellant testified, as well as numerous other witnesses. The jury found appellant guilty of both charges. A sentencing hearing was held, and on April 29, 1999, the trial court sentenced appellant to an eighteen month prison term for the OMVI offense and a six month term of local incarceration for driving without a valid operator's license. The sentences were to be served concurrently. Appellant's operator's license was permanently revoked, his license plates were impounded, and appellant was ordered to pay a $1,500 fine. Appellant appeals, raising two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN OVERRULING HIS MOTION TO SUPPRESS.
In his first assignment of error, appellant contends that the trial court should have suppressed the statements he made prior to his formal arrest by Tpr. Gentry. Appellant argues that he was in custody at all times, and that Dep. Welch's questions were part of a custodial interrogation conducted without a Miranda warning.
When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to evaluate the credibility of witnesses and resolve questions of fact. Statev. Clay (1973), 34 Ohio St.2d 250, 251. In reviewing the decision of a trial court on a motion to suppress, the appellate court must accept the findings of fact if supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 593, appeal dismissed, 69 Ohio St.3d 1488. Accepting such facts as true, the appellate court must then independently determine, as a matter of law, and without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. Id.
The Miranda warning of a defendant's constitutional rights is designed to safeguard against possible abuses by police when interrogating a defendant. It is premised upon the theory that police interrogation after a defendant has been taken into custody is inherently coercive and there is a substantial possibility that a defendant unaware of his rights could involuntarily confess to an offense he did not commit. Miranda v. Arizona (1966),384 U.S. 436, 467, 86 S.Ct. 1602, 1624. Any statement given under police interrogation, without the Miranda warning first being given, may later be excluded from use by the state in any resulting criminal prosecution. Id. at 476, 86 S.Ct. at 1629; Berkemer v. McCarty
(1984), 468 U.S. 420, 428-429, 104 S.Ct. 3138, 3144.
A Miranda warning must be given only where the individual being questioned is in custody, in other words, only where questions are posed as part of a "custodial interrogation."California v. Beheler (1983), 463 U.S. 1121, 1124,103 S.Ct. 3517, 3519; Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. Therefore, the first inquiry that must be made is whether the questioned individual was in custody at the time of the interrogation. Beheler, 436 U.S. at 1125, 103 S.Ct. at 3520;Oregon v. Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 714. When judging whether an individual is in custody for purposes ofMiranda, it must be determined whether there was either a formal arrest or a restraint of the individual's freedom of movement commensurate with that of a formal arrest. Beheler,436 U.S. at 1125, 103 S.Ct. at 3520. This is a fact-sensitive inquiry depending upon the totality of the objective circumstances. The question posed in this inquiry is whether an objective, reasonable person in the suspect's place would have understood the situation to have been custodial. Berkemer, 468 U.S. at 442,104 S.Ct. 3151.
Miranda was not intended to hamper the ability of law enforcement officers to legitimately investigate crimes.384 U.S. at 477-478, 86 S.Ct. at 1629-1630. Questioning of person at the scene of a possible crime ordinarily does not fall within the ambit of custodial interrogation. Id. This includes roadside questioning of motorist detained for purposes of a routine traffic stop. Berkemer, 468 U.S. at 437-439, 104 S.Ct. at 3148-3149. Where the suspect is not in custody, the fact that an officer may consciously seek to elicit incriminating statements, even where the suspect is the focus of the investigation, does not necessarily entitle the suspect to a Miranda warning. Minnesotav. Murphy (1984), 465 U.S. 420, 431, 104 S.Ct. 1136, 1144. But once the suspect is placed under arrest or taken into the equivalent of custody, a Miranda warning is required. Berkemer,468 U.S. at 440, 104 S.Ct. 3138.
In the instant case, there is no question that appellant was not in custody when first approached by Dep. Welch. In fact, Dep. Welch's questions to appellant were nothing more than the normal inquiries which may be made when attempting to determine what had occurred at the scene. Appellant was the only person conspicuously not part of the fire and emergency crews. When asked his name, appellant gave a false name. The story he initially gave to Dep. Welch was incredible under the circumstances: that he was walking in extremely cold, snowing weather while only lightly dressed. Although Dep. Welch noticed appellant displayed many characteristics of intoxication, Dep. Welch made no attempt to arrest appellant or restrain his freedom at that time.
Whether appellant was in custody when Dep. Welch placed him in the patrol cruiser requires further analysis. Having an individual sit in a police cruiser for a short time to answer a few questions does not necessarily elevate the situation to something greater than an ordinary traffic stop. State v. Warrell
(1987), 41 Ohio App.3d 286, 287. This is true whether the individual is being requested to stay while an accident report is completed or relevant facts are ascertained. State v. Burke (July 30, 1997), Wayne App. No. 96CA0074, unreported. An individual may also be temporarily restrained either for his own safety or that of the officer. See State v. Schultz (1985), 23 Ohio App.3d 130. This is especially so where from the beginning of the apparent detention, it is either made clear or simply obvious that the detention is to be brief and done in public. See State v. Welly
(Nov. 13, 1996), Seneca App. No. 13-96-24, unreported.
In the instant case, the trial court noted that other than suspecting appellant was intoxicated, Dep. Welch had objective, legitimate reasons to place appellant in the police cruiser without appellant being in custody or his freedom restrained. First, and most important, was appellant's own safety. Just moments before, he had attempted to walk into an open lane of traffic. Second, Dep. Welch sought to inquire about what had happened, especially whether appellant was the owner of the burning car and whether appellant had been driving. This was part of a routine, non-custodial investigation. These proper, objective motivations weigh heavily in demonstrating that appellant was not in custody at that time.
The brief and public nature of appellant's placement in the cruiser also indicates that he was not in custody. At most, appellant was in the cruiser for only a few minutes. By comparison, in Burke, the defendant had been placed in the cruiser for over fifty minutes as part the investigation, yet this entire time was not deemed to have been custodial. In further support of the non-custodial nature of Dep. Welch's actions was that, although he suspected appellant was intoxicated, he left it to Tpr. Gentry to independently determine whether appellant was intoxicated. If appellant was already under arrest for OMVI, there would have been no need for Tpr. Gentry to conduct further investigation.
Under the totality of the circumstances, it is clear that appellant was not in custody when questioned by Dep. Welch.Miranda warnings were unnecessary, and the trial court properly overruled the motion to suppress as to statements made by appellant to Dep. Welch. The assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN THE APPOINTMENT OF COUNSEL.
In his second assignment of error, appellant contends that he was denied a fair trial due to ineffective assistance of his trial counsel. Appellant argues that trial counsel failed to properly challenge certain jurors during the jury voir dire before trial and certain testimony at trial.
To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, the defendant must show that, as a result of this deficiency, he was prejudiced at trial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; Statev. Mills (1992), 62 Ohio St.3d 357, 370, rehearing denied,63 Ohio St.3d 1406, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227, 112 S.Ct. 3048. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. There must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1997), 522 U.S. 953,118 S.Ct. 376.
Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, id. at 142, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland,466 U.S. at 689, 104 S.Ct. at 2065; State v. Lytle (1976), 48 Ohio St.2d 391,397, vacated in part on other grounds, Lytle v. Ohio (1978),438 U.S. 910, 98 S.Ct. 3135. It is not the role of the appellate court to second-guess the strategic decisions of trial counsel.State v. Carter (1995), 72 Ohio St.3d 545, 558, certiorari denied, 516 U.S. 1014, 116 S.Ct. 575. Hindsight may not be used to distort the assessment of what was reasonable in light of trial counsel's perspective at the time. State v. Cook (1992),65 Ohio St.3d 516, 524-525, certiorari denied, Cook v. Ohio (1994),510 U.S. 1040, 114 S.Ct. 681.
The use of peremptory challenges or challenges for cause during jury voir dire is a matter of trial strategy. State v.McNeill (1998), 83 Ohio St.3d 438, 449, certiorari denied, McNeillv. Ohio (1999), 526 U.S. 1137, 119 S.Ct. 1792. Challenges to a juror need not be exercised where prospective jurors state that they can be fair and impartial. Lakewood v. Town (1995),106 Ohio App.3d 521, 526, appeal dismissed (1996), 75 Ohio St.3d 1404. Even where a prospective juror knows or has contact with a witness or party in the action, the juror need not be challenged where the juror can remain fair and impartial. Id.; see State v. Ledford
(Jan. 24, 2000), Clinton App. No. CA99-05-014, unreported, at 11-12.
Appellant contends that his trial counsel should have challenged two jurors, Juror Harbottle and Juror Pangallo, because both jurors had prior contact with appellant, the prosecutor, or state's witnesses. Juror Harbottle knew appellant through appellant's previous incarceration in the Clermont County Jail. Juror Harbottle knew a state's witness, and her son and daughter-in-law are members of the Ohio State Highway Patrol. Juror Pangallo stated that he is a friend of the Clermont County prosecutor and that his son is a municipal police officer.
In neither case was trial counsel required to challenge these jurors. Both jurors indicated that they would be fair and impartial. Both stated that they would remain open to all arguments of the defense. Additionally, it was during trial that Juror Harbottle realized that she had previously seen appellant at the jail. At that time, she notified the court of this fact, but there was nothing to suggest that she was prejudiced against appellant by this prior contact. Without some indication that these jurors were prejudiced against appellant, we must conclude that they adhered to their statements that they would remain fair and impartial.
Appellant also contends that his trial counsel was ineffective by failing to object to trial testimony concerning those statements not suppressed by the trial court. This argument is without merit. A motion to suppress, such as a Crim.R. 12(B) motion, constitutes a timely objection to preserve any error as required by Evid.R. 103(A)(1). State v. Callihan (1992),80 Ohio App.3d 184, 190-191, jurisdictional motion overruled,65 Ohio St.3d 1465. These rules are set forth in clear and unambiguous language. There is no merit to this frivolous argument.
Appellant's trial counsel was not ineffective, and appellant was not denied a fair trial. The assignment of error is overruled.
Judgment affirmed.
 ___________________ VALEN, J.
POWELL, P.J., and WALSH, J., concur.